**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Apex Brands, Inc.; Apex Tool Group, LLC<br><br>Plaintiffs,<br><br>v.<br><br>Jinhua Haode Technology Co., Ltd.<br><br>Defendant. | Civil Action No. 22-1730<br><br>**Jury Trial Demanded** |

## Complaint

Plaintiffs Apex Brands, Inc. ("Apex Brands") and Apex Tool Group, LLC ("Apex Tool") (collectively, "Apex") bring this action against Jinhua Haode Technology Co., Ltd. ("Defendant Haode") and state as follows.

## Nature of the Case

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* and, more particularly, 35 U.S.C. §§ 271 and 281. This is also an action for trademark infringement, false designation of origin, unfair competition, injunctive relief, and damages arising under the United States Trademark Act, 15 U.S.C. §§ 1051 *et seq.*

2. Defendant Haode has been making, using, selling, and/or offering for sale, and importing into the United States products in its Haode product lines that infringe United States Patent No. 11,161,366 ("the '366 patent") and United States Patent No. 11,325,413 ("the '413 patent"). These patents (collectively, the "patents-in-suit") are

attached as Exhibits A and B, respectively, and relate to a measurement tool having a triangular flat plate with an extension element, also known as a "speed square." Plaintiff Apex seeks damages and an injunction against any further infringement of its patents by Defendant Haode.

3. Defendant Haode has been making, using, selling, and/or offering for sale, and importing into the United States products in its Haode product lines that infringe Apex's CRESCENT® trademark. Plaintiff Apex seeks damages and an injunction against any further infringement of its CRESCENT® trademark by Defendant Haode.

**Parties**

4. Apex Tool is a Delaware limited liability company with its principal place of business located in Sparks, Maryland. Together with its affiliated companies, Apex Tool designs, manufactures, and sells professional hand, power, and electronic tools worldwide, serving the industrial, vehicle service and assembly, aerospace, electronics, construction, and serious DIY markets. Apex Tool Group brands, which include SATA®, GEARWRENCH®, CRESCENT®, CLECO®, WELLER® and APEX®, are renowned for quality, innovation, and value.

5. Apex Brands is a Delaware limited liability company with its principal place of business located in Sparks, Maryland. Apex Brands is the owner of the entire right, title, and interest in the patents-in-suit. Apex Brands is a wholly owned subsidiary of Apex Tool, and Apex Brands' profits inexorably flow to Apex Tool.

6. Upon information and belief, Defendant Jinhua Haode Technology Co., Ltd. is a Chinese company with headquarters at No.99 Fuyang Street, Lingxia Town, Jindong District, Jinhua City, Zhejiang Province, China.

**Background and Patents-in-Suit**

7. Apex is one of the world's largest manufacturers of professional hand and power tools. One of Apex's brands is "Crescent Tools". Crescent Tools has a history of over 100 years of performance, quality, and innovation. After being founded in 1907, Crescent has consistently expanded and built a reputable reputation under its famous brand names: Crescent® wrenches and mechanics hand tools, Crescent Wiss® snips, scissors, shears, knives, and trade tools, Crescent Lufkin® measuring tapes, rules, and wheels, Crescent Nicholson® files and saws, Crescent H.K. Porter® heavy-duty cutting products, and Crescent JOBOX® on-site storage, flammable liquid storage, and truck storage solutions providing a total of over 2,800 products. As a result of Apex's development of the CRESCENT® brand, Apex owns extensive common law rights in the CRESCENT® trademark as well as many registered trademarks covering CRESCENT and CRESCENT-formative marks including U.S. Reg. Nos. 6,309,209; 6,608,651; 6,142,728; 6,257,553; 4,536,023; 2,873,051; and 299,305.

8. Apex sells a layout "square" tool called a "speed square" under the CRESCENT® brand. This speed square includes an extension element that allows one side of the triangle to be extended.



The CRESCENT® speed square is valued by consumers. For example, more than 1000 Amazon® customers have rated the Crescent speed square product, and 74% of them gave it a perfect five stars. The average rating for this tool is 4.5 out of 5 stars. Here is Amazon®'s top review for the product:



Brian VanderLeeuw

**Best speed square ever.**

Reviewed in the United States on January 31, 2021

Size: 6" | Style: 2-in-1 Extendable Square Discontinued | Verified Purchase

This is the greatest thing since sliced bread. The extension comes in super handy. I can mark up to 12x8 duct with out a straight edge. And up to 24x8 duct by just flipping edges. Everyone I work with always asks about it and where I got it. Now 5 more guys bought them. Worth the money all day.

5 people found this helpful

Ex. E. The CRESCENT® speed square has also received significant industry praise. For example, it was named Tool Category winner of the Red Dot Award: Product Design 2020 for outstanding design quality.

9. Apex makes and sells a similar speed square under the Home Depot's HUSKY™ brand.




10. Apex received patents related to the innovative research and development that resulted in its speed square products. Two of those patents are the patents-in-suit, which are both titled "Speed Square with Extension." The '366 patent duly and legally issued on November 2, 2021. The '413 patent duly and legally issued on May 10, 2022.




FIG. 1

Ex. A, Fig. 1. The inventions described and claimed in these patents are valuable. For example, the extension element allows a craftsman to use the same size speed square for multiple different size materials. The craftsman can retract the extension element when working with smaller materials and extend it when working with larger materials.

**Defendant Haode's Infringing Products**

11. Defendant Haode offers an infringing speed square product for sale in the U.S. which it labels with the word "Krecent".[1] Upon information and belief, Defendant Haode copied Apex's design when it developed this product.




Defendant Haode offers this product for sale on Amazon® through its Amazon® storefront.[2] It also offers the product for sale through its website, which identifies the product as the "WX-2021HD 3D Multi-angle measuring ruler".[3] Upon information and

[1] Haode's website refers to this product as the "WX-2021HD 3D Multi-angle measuring ruler".
[2]https://www.amazon.com/s?me=AGAJSLPZ3T486&marketplaceID=ATVPDKIKX0DER; Ex. F.

[3] https://www.wxtools.com.cn/rafter-square/217.html; Ex. G.

belief, Defendant Haode is also selling the infringing product through other Amazon® storefronts and using different labels.

12. Defendant Haode applied for a trademark application, U.S. App. No. 90/791,489, for the "Krecent" name it used for these products, representing to the United States Patent and Trademark Office ("USPTO") that it has been using this name in commerce since March 2021. Ex. I. On March 15, 2022, the USPTO entered an office action that refused to register "Krecent" because it was likely to cause confusion with a number of CRESCENT® trademarks owned by Apex. Ex. J.

**Apex's Notification to Haode**

13. Apex demanded Defendant Haode cease infringing Apex's '366 patent and CRESCENT® trademark in a letter dated April 13, 2022. Ex. K.[4] Apex sent this letter to Defendant Haode by email and DHL to the addresses listed on Defendant Haode's website and by Federal Express to two attorneys who represent Defendant Haode before the U.S. Patent and Trademark Office. Federal Express provided a proof-of-delivery for the letters sent to Defendant Haode's attorneys on April 14, 2022 and DHL provided proof of delivery to Defendant Haode on May 16, 2022.

14. Defendant Haode has not responded to Apex and it has not stopped selling the infringing speed squares. Instead, Defendant Haode has attempted to hide its obvious

[4] This letter additionally informed Haode that its speed square would infringe allowed claims of United States Patent Application No. 17/497,406, which ultimately issued as the '413 patent on May 10, 2022.

copying of Apex's product and brand while still selling infringing products. Specifically, Defendant Haode's Amazon® storefront now blurs the "KRESCENT" label on the images it uses on Amazon®.




Ex. H.[5]

**Irreparable Harm**

15. Apex's market share will be damaged if Defendant Haode is allowed to continue to sell its infringing speed square. Apex is a leading innovator in the design of speed squares related to the patents-in-suit. Upon information and belief, other than Apex's products and Defendant Haode's products, no speed squares with extension elements are sold on the market. Allowing Defendant Haode to continue to sell its

[5] Image downloaded from this weblink on June 21, 2022: https://www.amazon.com/krecent-Aluminium-Extendable-Multifunctional-Woodworking/dp/B09FXR8DRR/ref=sr_1_1?m=AGAJSLPZ3T486&marketplaceID=ATVPDKIKX0DER&qid=1655822937&s=merchant-items&sr=1-1

product will therefore harm Apex by preventing it from offering the only product with this feature in the market.

16. Apex will additionally suffer damage to its reputation and a loss of goodwill. Apex prides itself on standing for "quality, innovation, and value" which is embodied by its brands such as Crescent®. Apex has spent over 100 years building its now renowned Crescent® brand products. As a result, the brand's expansion has been continuous and significant in recent years (expanding to add Lufkin, Wiss, Nicholson, and H.K. Porter in 2017, and JBOX in 2018). A similar product on the market can cause reputational damage in the case of inferior quality, materials, and overall consumer experience. Without being able to personally manufacture the product or oversee production, Apex cannot be assured of its quality, and will be harmed by any defects despite being outside of its control.

17. The injuries Apex suffers will not be remediable at law. Reputational injury and loss of goodwill is unquantifiable. Any injury sustained is exacerbated by the position of Apex and Defendant Haode in the market as direct competitors. Further, this damage is continuous and ongoing, defying clear quantification.

**Jurisdiction and Venue**

18. This action arises under the Patent Act, 35 U.S.C. § 271 *et seq.* and 35 U.S.C. § 281, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

19. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

20. This Court has personal jurisdiction over Defendant Haode. Defendant Haode coordinated with Amazon® to advertise and distribute its infringing products to put them into the stream of commerce with the expectation that they would be available for purchase throughout the country, including Minnesota. Upon information and belief Defendant Haode maintained established distribution channels in Minnesota, because infringing measurement tools manufactured by Defendant Haode were offered for sale and sold throughout the United States, including Minnesota, through Amazon® and Defendant's interactive online website.

21. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(3) and (c)(3). Upon information and belief, Defendant Haode is a foreign corporation that does not reside or have a regular and established place of business anywhere in the United States. Therefore, venue is proper in any judicial district in which Defendant Haode is subject to personal jurisdiction. As set forth above, Defendant Haode has committed acts of infringement in Minnesota and this Court has personal jurisdiction over Defendant Haode.

## Count 1
## Claim for Patent Infringement of U.S. Patent No. 11,161,366

22. Apex incorporates by reference each of the paragraphs above as if fully stated herein.

23. For example, by its activities related to making, using, selling, offering for sale, and/or importing in or into the United States its Haode speed square, Defendant Haode has infringed at least claim 14 of the '366 patent.

24. A chart that applies claim 14 of the ’366 patent to a representative example of the Haode speed square is attached hereto as Exhibit C.

25. Defendant Haode’s speed square satisfies Element 14[p] of the ’366 patent as shown in Exhibit C.

26. Defendant Haode’s speed square satisfies Element 14[a] of the ’366 patent as shown in Exhibit C.

27. Defendant Haode’s speed square satisfies Element 14[b] of the ’366 patent as shown in Exhibit C.

28. Defendant Haode’s speed square satisfies Element 14[c] of the ’366 patent as shown in Exhibit C.

29. Defendant Haode’s speed square satisfies Element 14[d] of the ’366 patent as shown in Exhibit C.

30. Defendant Haode’s speed square satisfies Element 14[e] of the ’366 patent as shown in Exhibit C.

31. Therefore, Defendant Haode directly infringes, literally and under the doctrine of equivalents, claims of the ’366 patent including, for example and without limitation, claim 14 of the ’366 patent, through its making, using, selling, offering for sale, and/or importing of, for example and without limitation, its Haode speed square product.

32. Defendant Haode also indirectly infringes the ’366 patent, including, for example and without limitation, claim 14. Users of Defendant Haode’s speed square directly infringe at least some claims of the ’366 patent. Defendant Haode knew of the

’366 patent at least since April 14, 2022 when it received Apex’s letter. Defendant Haode knew or was willfully blind to the fact that its speed square is especially made or especially adapted for use in an infringement. Further, Defendant Haode encourages its customers to use the product in a way that results in infringement.

33. Defendant Haode has contributed to the infringement of the ’366 patent by others, including its customers. Defendant Haode’s speed square is not a staple article of commerce suitable for substantial non-infringing uses.

34. Defendant Haode has actively induced others, including its customers, to infringe the claims of the ’366 patent, including but not limited to claim 14. For example, through Defendant Haode’s advertising and sales of its product it instructs and encourages its customers to use the product in a manner that results in direct infringement of the ’366 patent.

35. Defendant Haode’s infringement of the ’366 patent is willful. Defendant Haode has been aware of, or willfully blind to, its infringement of the ’366 patent since at least about April 14, 2022. There is an objectively high likelihood that Defendant Haode’s actions constitute infringement of the ’366 patent and there is not a substantial defense in this case. Nevertheless, upon information and belief Defendant Haode has taken no actions to rectify its infringement. It has not changed its product design or ceased to sell its speed square product. Defendant Haode’s failure to avoid infringing Apex’s ’366 patent was egregious.

36. Apex has been damaged by Defendant Haode's infringement of the '366 patent and will continue to be damaged in the future unless Apex is enjoined from infringing the '366 patent.

37. Defendant Haode's infringement of the '366 patent has caused and will continue to cause damage to Apex, causing irreparable harm for which there is no adequate remedy at law, unless enjoined.

38. Apex has satisfied the notice and/or marking provisions of 35 U.S.C. § 287. For example, Apex provided Defendant Haode notice of its infringement through the April 13, 2022 letter discussed above.

**Count 2**
**Claim for Patent Infringement of U.S. Patent No. 11,325,413**

39. Apex incorporates by reference each of the paragraphs above as if fully stated herein.

40. For example, by its activities related to making, using, selling, offering for sale, and/or importing in or into the United States its Haode speed square, Defendant Haode has infringed at least claim 1 of the '413 patent.

41. A chart that applies claim 1 of the '413 patent to a representative example of the Haode speed square is attached hereto as Exhibit D.

42. Defendant Haode's speed square satisfies Element 1[p] of the '413 patent as shown in Exhibit D.

43. Defendant Haode's speed square satisfies Element 1[a] of the '413 patent as shown in Exhibit D.

44. Defendant Haode's speed square satisfies Element 1[b] of the '413 patent as shown in Exhibit D.

45. Defendant Haode's speed square satisfies Element 1[c] of the '413 patent as shown in Exhibit D.

46. Defendant Haode's speed square satisfies Element 1[d] of the '413 patent as shown in Exhibit D.

47. Defendant Haode's speed square satisfies Element 1[e] of the '413 patent as shown in Exhibit D.

48. Defendant Haode's speed square satisfies Element 1[f] of the '413 patent as shown in Exhibit D.

49. Defendant Haode's speed square satisfies Element 1[g] of the '413 patent as shown in Exhibit D.

50. Defendant Haode's speed square satisfies Element 1[h] of the '413 patent as shown in Exhibit D.

51. Therefore, Defendant Haode directly infringes, literally and under the doctrine of equivalents, claims of the '413 patent including, for example and without limitation, claim 1 of the '413 patent, through its making, using, selling, offering for sale, and/or importing of, for example and without limitation, its speed square.

52. Defendant Haode also indirectly infringes the '413 patent, including, for example and without limitation, claim 1. Users of Defendant Haode's speed square directly infringe at least some claims of the '413 patent. Defendant Haode knew of the '413 patent at least since it issued in May 2022, having received notice that claims were

allowed in Apex's April 13, 2022 letter. Defendant Haode knew or was willfully blind to the fact that its speed square is especially made or especially adapted for use in an infringement. Further, Defendant Haode encourages its customers to use the product in a way that results in infringement.

53. Defendant Haode has contributed to the infringement of the '413 patent by others, including its customers. Defendant Haode's speed square is not a staple article of commerce suitable for substantial non-infringing uses.

54. Defendant Haode has actively induced others, including its customers, to infringe the claims of the '413 patent, including but not limited to claim 1. For example, through Defendant Haode's advertising and sales of its product it instructs and encourages its customers to use the product in a manner that results in direct infringement of the '413 patent.

55. Defendant Haode's infringement of the '413 patent is willful. Defendant Haode has been aware of, or willfully blind to, its infringement of the '413 patent since it issued. There is an objectively high likelihood that Defendant Haode's actions constitute infringement of the '413 patent and there is not a substantial defense in this case. Nevertheless, upon information and belief Defendant Haode has taken no actions to rectify its infringement. It has not changed its product design or ceased to sell its speed square product. Defendant Haode's failure to avoid infringing Apex's '413 patent was egregious.

56. Apex has been damaged by Defendant Haode's infringement of the '413 patent and will continue to be damaged in the future unless Defendant Haode is enjoined from infringing the '413 patent.

57. Defendant Haode's infringement of the '413 patent has caused and will continue to cause damage to Apex, causing irreparable harm for which there is no adequate remedy at law, unless enjoined.

58. Apex has satisfied the notice and/or marking provisions of 35 U.S.C. § 287. For example, Apex provided Defendant Haode notice of its infringement through the April 13, 2022 letter discussed above.

## Count 3
## Trademark Infringement (15 U.S.C. § 1114(1)(a))

59. Apex incorporates by reference each of the paragraphs above as if fully stated herein.

60. Apex is the owner of the CRESCENT® trademark and of registered trademarks covering CRESCENT and CRESCENT-formative marks which are valid and subsisting in full force and effect.

61. Defendant Haode's use of the "Krecent" mark in interstate commerce and attempt to register the mark "Krecent" constitutes infringement of Apex's CRESCENT® trademark in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

62. Defendant Haode's use and attempt to register the mark "Krecent" is likely to confuse consumers as to the source or origin of Defendant Haode's goods.

63. The sight, sound, and meaning of Defendant Haode's "Krecent" mark is nearly identical to Apex's CRESCENT® trademark.

64. The likelihood of confusion also is not mitigated to the extent that Defendant Haode uses and seeks to register the stylized mark krecent. This stylized mark is still comprised predominantly of the literal element "Krecent," which, as previously discussed, is nearly identical to Apex's CRESCENT® trademark in terms of sight, sound, and meaning.

65. The goods used in connection with Defendant Haode's "Krecent" mark are commercially related and in many cases identical to the goods used in connection with Apex's CRESCENT® trademark. Both parties use their respective marks in connection with a wide variety of measuring instruments. Moreover, Defendant Haode's U.S. App. No. 90/791,489 covers a wide variety of goods in international Class 9 that directly conflict with Apex's prior registrations for the CRESCENT® trademark, including Apex's U.S. Reg. Nos. 6,309,209 and 6,608,651. Exs. L-M.

66. The parties' channels of trade for the goods sold under their respective marks directly overlap. For example, both parties sell goods under their respective marks directly to consumers through Amazon.com. A consumer searching for one of Apex's CRESCENT® branded products could easily mistype their search query, and if they inadvertently spell Apex's mark with a "K" instead of a "C" they would potentially encounter Defendant Haode's identical products and may not distinguish those products from Apex's CRESCENT® branded products. Moreover, Defendant Haode's U.S. App.

No. 90/791,489 does not restrict the sale of its goods enumerated in that application to any specific channel of trade, so it must be presumed that its channels of trade will overlap with Apex's own channels of trade.

67. The parties promote and sell their goods under their respective marks to the same class of consumers. Both parties promote and sell their goods directly to consumers through channels such as consumer online marketplaces, in particular Amazon.com. The nature and price point of the parties' respective goods do not require sophistication or a high degree of care. A consumer intending to purchase one of Apex's CRESCENT® branded goods could easily see one of Defendant Haode's similar or identical goods and mistakenly believe that the goods emanate from the same source without realizing the nearly imperceptible difference between the marks themselves.

68. On information and belief, Defendant Haode adopted its "Krecent" mark in a bad faith attempt to trade off of the sterling reputation and high degree of consumer goodwill associated with Apex's CRESCENT® trademark. Indeed, when Apex notified Defendant Haode of its infringing activities, Defendant Haode did not stop use of its "Krecent" mark or withdraw its U.S. App. No. 90/791,489 but did blur the "Krecent" mark on the label for its goods shown on Amazon.com.

69. Apex's CRESCENT® trademark is both conceptually and commercially strong. Apex's use of the CRESCENT® trademark dates back to at least as early as 1907, and it has attained extensive rights and consumer goodwill through its widespread, exclusive, and continuous use of the CRESCENT® trademark in the United States and throughout the world.

70. In its U.S. App. No. 90/791,489, Defendant Haode claims to have first used its "Krecent" mark in commerce in the United States on March 17, 2021, over a century after Apex first began using its CRECENT® trademark in commerce in the United States. Apex indisputably has priority rights over Defendant Haode's use of the infringing "Krecent" mark.

71. Upon information and belief, Defendant Haode's infringement of Apex's CRESCENT® trademark has been and continues to be intentional, willful, and without regard for Apex's rights in the CRESCENT® trademark.

72. Upon information and belief, Defendant Haode has earned profits by virtue of the infringement of Apex's CRESCENT® trademark.

73. Apex has been damaged by Defendant Haode's infringement of Apex's CRESCENT® trademark and will continue to be damaged in the future unless Defendant Haode is enjoined from infringing the CRESCENT® trademark.

74. Defendant Haode's infringement of the CRESCENT® trademark has caused and will continue to cause damage to Apex, causing irreparable harm for which there is no adequate remedy at law, unless enjoined.

**Count 4**
**False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))**

75. Apex incorporates by reference each of the paragraphs above as if fully stated herein.

76. Apex is the owner of all rights and title to, and has valid protectable prior rights in, the CRESCENT® trademark.

77. The infringing goods sold and offered for sale by Defendant Haode in interstate commerce are of the same or similar nature as the goods sold and offered for sale by Apex.

78. By misappropriating and using a virtually identical mark, Defendant Haode has misrepresented and falsely described to the public the origin and source of Defendant Haode's goods, and has created a likelihood of confusion among the public, the relevant consumers, and the ultimate purchasers as to both the source and sponsorship of Defendant Haode's goods.

79. Defendant Haode's unauthorized and tortious conduct has also deprived and will continue to deprive Apex of the ability to control the consumer perception of Apex's goods offered in connection with Apex's CRESCENT® trademark, placing Apex's valuable reputation and goodwill in Defendant Haode's hands.

80. Defendant Haode's unlawful and unauthorized distribution, promotion, offer for sale, and sale of infringing goods creates express and implied misrepresentations that the infringing goods were authorized, approved, or sponsored by Apex, all towards Defendant Haode's profit and Apex's damage and injury.

81. By engaging in the aforesaid acts, Defendant Haode is unfairly competing with Apex.

82. Upon information and belief, Defendant Haode's wrongful conduct has been and continues to be intentional, willful, and without regard for Apex's rights in the CRESCENT® trademark, as described above.

83. Upon information and belief, Defendant Haode has gained profits by virtue of its infringement of Apex's CRESCENT® trademark.

84. Apex has been damaged by Defendant Haode's infringement of Apex's CRESCENT® trademark and will continue to be damaged in the future unless Defendant Haode is enjoined from infringing the CRESCENT® trademark.

85. Defendant Haode's infringement of the CRESCENT® trademark has caused and will continue to cause damage to Apex, causing irreparable harm for which there is no adequate remedy at law, unless enjoined.

**Count 5**
**Common Law Trademark Infringement and Unfair Competition**

86. Apex incorporates by reference each of the paragraphs above as if fully stated herein.

87. Apex is the owner of the CRESCENT® trademark, which is valid and subsisting in full force and effect.

88. Defendant Haode's use of the "Krecent" mark in interstate commerce is likely to confuse consumers as to the source or origin of Defendant Haode's measuring products and constitutes common law trademark infringement and unfair competition under federal law and the laws of the State of Minnesota.

89. Apex has used the nearly identical mark CRESCENT® in commerce in the United States for over a century. Defendant Haode knew or should have known of Apex's longstanding use and common law rights in the CRESCENT® trademark for similar if not identical measuring tools and products.

90. Upon information and belief, Defendant Haode's wrongful conduct has been and continues to be intentional, willful, and without regard for Apex's extensive common law rights in the CRESCENT® trademark, as described above.

91. Upon information and belief, Defendant Haode has gained profits by virtue of its infringement and unfair competition of Apex's CRESCENT® trademark.

92. Apex has been damaged by Defendant Haode's infringement and unfair competition of Apex's CRESCENT® trademark and will continue to be damaged in the future unless Defendant Haode is enjoined from infringing the CRESCENT® trademark.

93. Defendant Haode's infringement and unfair competition of the CRESCENT® trademark has caused and will continue to cause damage to Apex, causing irreparable harm for which there is no adequate remedy at law, unless enjoined.

## Prayer for Relief

Apex respectfully requests the following relief:

A. A judgment that Defendant Haode has infringed the patents-in-suit;

B. A judgment and order requiring Defendant Haode to pay all appropriate damages, including prejudgment and post-judgment interest, and including increased damages for its willful infringement;

C. A judgment and order requiring Defendant Haode to pay all costs of this action, including all disbursements and attorney fees because this case is exceptional under 35 U.S.C. § 285;

D. Permanent injunctions against Defendant Haode and its officers, agents, employees, attorneys, and all persons in active concert or participation with them, prohibiting infringement of the patents-in-suit;

E. A judgement that Defendant Haode has infringed Apex's CRESCENT® trademark;

F. A judgment declaring that Defendant Haode's trademark infringement was knowing, intentional, and willful

G. Permanent injunctions against Defendant Haode and its officers, agents, employees, attorneys, and all persons in active concert or participation with them, prohibiting infringement of Apex's CRESCENT® trademark and any colorable imitation or confusingly similar variation of Apex's CRESCENT® trademark, in connection with the promotion, advertising, performance, and/or sale of competitive or related goods by Defendant Haode;

H. An order for an accounting of all profits derived from Defendant Haode's trademark infringement of Apex's CRESCENT® trademark at Apex's expense;

I. An order for disgorgement of all revenue and profits from Defendant Haode's unlawful conduct, including an award of damages under 15 U.S.C. §§ 1117, 1125, and increasing such profits in accordance with 15 U.S.C. § 1117;

J. An order requiring Defendant Haode to pay Apex damages in an amount as yet undetermined caused by Defendant Haode's unlawful conduct, and trebling such damages in accordance with 15 U.S.C. § 1117;

K. An order for an award of costs, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117; and

L. Such other and further relief that this Court may deem just and equitable.

**Demand for a Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Apex demands a trial by jury of all issues so triable.

Respectfully submitted,

Date: July 7, 2022

*/s/ Bradley W. Micsky*
Bradley W. Micsky (0398178)
Nathan D. Louwagie (0397564)
CARLSON, CASPERS, VANDENBURGH, & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605
bmicsky@carlsoncaspers.com
nlouwagie@carlsoncaspers.com

David A. Jackson (*pro hac vice* to be filed)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 262-0807
Facsimile: (602) 734-3814

*Attorneys for Plaintiffs Apex Brands, Inc. and Apex Tool Group, LLC*